| Fill in this information to identify the case: |
|---|

Debtor 1    Franklin Lizausaba
aka Franklin J Lizausaba
aka Franklin Jose Lizausaba
aka Franklin Jose Lizasauba
aka Franklin Lizausaba
aka Franklin J Lizasauba, Sr.
aka Franklin J Lizasauba

Debtor 2    Sandra Lizausaba
aka Sandra L Lizausaba
aka Sandra L Stephenson
aka Sandra Louise Lizausaba
aka Sandra Louise Lizasauba
aka Sandra Lizasauba
aka Lisa S Lizausaba
aka Sandra L Lizasauba

(Spouse, if filing)

United States Bankruptcy Court for the SOUTHERN  District of FLORIDA

Case number 14-25346-AJC

## Official Form 410S1
## Notice of Mortgage Payment Change                                    12/15

**If the debtor's plan provides for payment of postpetition contractual installments on your claim secured by a security interest in the debtor's principal residence, you must use this form to give notice of any changes in the installment payment amount. File this form as a supplement to your proof of claim at least 21 days before the new payment amount is due.** See Bankruptcy Rule 3002.1.

**Name of creditor:** OCWEN LOAN SERVICING, LLC

**Court claim no.** (if known):

**Last 4 digits** of any number you use to identify the debtor's account: 3908

**Date of payment change:** 07/01/2016
Must be at least 21 days after date of this notice

**New total payment:** $1,969.10
Principal, interest, and escrow, if any

| Part 1: | Escrow Account Payment Adjustment |
|---|---|

1. **Will there be a change in the debtor's escrow account payment?**
   ☐ No.
   ■ Yes.    Attach a copy of the escrow account statement prepared in a form consistent with applicable nonbankruptcy law. Describe the basis for the change. If a statement is not attached, explain why: _____

Current escrow payment: $538.16          New escrow payment: $534.23

| Part 2: | Mortgage Payment Adjustment |
|---|---|

2. **Will the debtor's principal and interest payment change based on an adjustment to the interest rate on the debtor's variable-rate account?**
   ■ No
   ☐ Yes.    Attach a copy of the rate change notice prepared in a form consistent with applicable nonbankruptcy law. If a notice is not attached, explain why: _____

Current interest rate:                    New interest rate:

Current principal and interest payment:   New principal and interest payment:

| Part 3: | Other Payment Change |
|---|---|

3. **Will there be a change in the debtor's mortgage payment for a reason not listed above?**
   ■ No
   ☐ Yes    Attach a copy of any document describing the basis for the change, such as a repayment plan or loan modification agreement.
   *(Court approval may be required before the payment change can take effect.)*

Reason for change: _____
Current mortgage payment:                 New mortgage payment:

Debtor 1  Franklin Lizausaba
aka Franklin J Lizausaba
aka Franklin Jose Lizausaba
aka Franklin Jose Lizasauba
aka Franklin Lizasauba
aka Franklin J Lizasauba, Sr.
aka Franklin J Lizasauba

Case number *(if known)*  14-25346-AJC

Print Name          Middle Name          Last Name

| Part 4: | Sign Here |
|---|---|

The person completing this Notice must sign it. Sign and print your name and your title, if any, and state your address and telephone number.

*Check the appropriate box.*

☐ I am the creditor

■ I am the creditor's authorized agent.

**I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.**

✖ /s/ Keith Labell    Date  May 24, 2016
Signature

| Print | Keith Labell | | | Title | Authorized Agent for Creditor |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |

| Company | Robertson Anschutz & Schneid, P.L. |
|---|---|

| Address | 6409    Congress Avenue, Suite 100 |
|---|---|
| | Number    Street |

| | Boca Raton | FL | 33487 |
|---|---|---|---|
| | City | State | ZIP Code |

| Contact Phone | 561-241-6901 | | Email | klabell@rasflaw.com |
|---|---|---|---|---|

**This notice of payment change is being filed in the interest of completeness in the court record. The effective date on this analysis was scheduled to be prior to the filing of this notice. In order to comply in good faith with FRBP 3002.1(b), Ocwen will adjust the effective date to 7/01/2016. Upon the new effective date debtor or the estate shall be solely responsible for the entire new payment amount until further adjustment.**

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that on May 24, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via CM/ECF or United States Mail to the following parties:

ROBERT SANCHEZ, ESQ.
355 WEST 49TH STREET
HIALEAH, FL  33012

FRANKLIN LIZAUSABA
6301 NW 199 LN
HIALEAH, FL  33015-2183

SANDRA LIZAUSABA
6301 NW 199 LN
HIALEAH, FL  33015-2183

NANCY K. NEIDICH
POB 279806
MIRAMAR, FL  33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE.
SUITE 1204
MIAMI, FL  33130

Robertson, Anschutz & Schneid, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909

By: /s/Keith Labell
Keith Labell, Esquire
Email: klabell@rasflaw.com



### Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
Helping Homeowners is What We Do! ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

02/12/2016

Loan Number:

Franklin J Lizausaba
6301 Nw 199 Ln
Miami Lakes, FL 33015

Property Address: 6301 Nw 199 Ln
Miami Lakes, FL 33015

Analysis Date:  02/11/2016

## ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT – BANKRUPTCY
## Projections for the Coming Year

Dear Borrower(s),

The enclosed update follows notice of your involvement in a bankruptcy petition, filed on 07/03/2014 under Chapter 13 of the Bankruptcy Code.

**This statement relates to the <u>post-petition</u> escrow payments and disbursements only.**

**Important Notices**
Please contact us at once if you are <u>not</u> the subject of a Chapter 13 proceeding or plan.
If you have filed for any other bankruptcy protection or received an Order of Discharge in a Chapter 7 bankruptcy case or received any other discharge under the U.S. Bankruptcy Code that applies to this property, please be advised that this notice is for informational purposes only and not intended as an attempt to collect a debt against you personally.

### PLEASE REVIEW THIS STATEMENT CAREFULLY - THE MORTGAGE PAYMENT MAY BE AFFECTED

This is a prediction of activity in the escrow account during the coming escrow year based on:

    a) Anticipated payments to be paid into the escrow account
    and
    b) Anticipated payments to be made from the escrow account

| Description of Next Disbursement | Due Date of Next Disbursement | Estimated Amount(s) of Next Disbursement |
|---|---|---|
| Flood Insurance | Aug 2016 | $709.00 |
| County Tax | Nov 2016 | $2,054.40 |
| Lender placed Hazard Insurance | Apr 2017 | $3,326.94 |
| Total Annual Disbursements | | $6,090.34 |

NMLS # 1852

BKA_SHORTAGEM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
Helping Homeowners is What We Do! ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

| | |
|---|---|
| Target Escrow Payment | $507.52 = (1/12th of $6,090.34) |
| Starting Escrow Balance Needed as of Jun 2016 | $1,522.66 |

| Month | Projected Payments To Escrow | Projected Payments From Escrow | Description | Projected Ending Balance | Required Bal Projections |
|---|---|---|---|---|---|
| Beginning Balance | | | | $0.26 | $1,522.66 |
| Jun-2016 | $507.52 | | | $507.78 | $2,030.18 |
| Jul-2016 | $507.52 | | | $1,015.30 | $2,537.70 |
| Aug-2016 | $507.52 | $709.00 | Flood Insurance | $813.82 | $2,336.22 |
| | | | | | |
| Sep-2016 | $507.52 | | | $1,321.34 | $2,843.74 |
| Oct-2016 | $507.52 | | | $1,828.86 | $3,351.26 |
| Nov-2016 | $507.52 | $2,054.40 | County Tax | $281.98 | $1,804.38 |
| | | | (PARCEL # 3020010032640) | | |
| Dec-2016 | $507.52 | | | $789.50 | $2,311.90 |
| Jan-2017 | $507.52 | | | $1,297.02 | $2,819.42 |
| Feb-2017 | $507.52 | | | $1,804.54 | $3,326.94 |
| Mar-2017 | $507.52 | | | $2,312.06 | $3,834.46 |
| Apr-2017 | $507.52 | $3,326.94 | Lender placed Hazard Insurance | $-507.36 | $1,015.04(Cushion) |
| | | | | | |
| May-2017 | $507.52 | | | $0.16 | $1,522.56 |
| TOTALS= | $6,090.24 | $6,090.34 | | | |

**Escrow cushion and potential escrow shortage**

In the event there is a tax and/or insurance increase over the coming escrow year, Federal law (RESPA) allows additional funds to be held to prevent the escrow account from being overdrawn.

This additional amount, which is called a cushion, may be up to 1/6th of the total payments estimated to be made from the escrow account for the coming escrow year.

To avoid a shortage, the escrow balance should not fall below the cushion amount at any time during the coming escrow year.

## Escrow Account Projections

NMLS # 1852

BKA_SHORTAGEM

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.



**Ocwen Loan Servicing, LLC**
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

**Total Anticipated Payments.** The anticipated payments from escrow for the coming year total $6,090.34.

**Required Escrow Cushion/Minimum Balance.** The required cushion amount is $1,015.04 (1/6 of $6,090.34).

Expected Balance Deficiency - According to the last month of the account history, the expected escrow balance is $0.26, making the escrow balance deficiency $0.00 (the balance deficiency equals the total amount paid into escrow minus the total amount of money to be paid out this year). Total escrow shortage - Based on the expected balance deficiency of $0.00, and the minimum required balance/cushion of $1,015.04, an additional $1,522.40 is needed for the escrow balance. Projected Monthly Payment for Escrow - The total escrow shortage of $1,522.40 has been spread over 57 months and broken into 57 equal monthly payments of $26.71 per month (the total anticipated shortage divided by 57). The shortage spread amount of $26.71 will be added to the target escrow payment of $507.52 calculated above, for a sum total of $534.23. This total, $534.23, will be the monthly amount due for payment into escrow.

Therefore, the first monthly mortgage payment for the coming escrow year, beginning with the payment due on 06/01/2016, will be $1,969.10 of which $1,434.87 will be for principal and interest and $534.23 will go into the escrow account. Note - The shortage amount may be paid directly. All or part of the above shortage may be sent to OCWEN at the address provided below. If the shortage is paid, the monthly payment will be adjusted accordingly.

If you have any questions in this regard, please do not hesitate to contact us. Our hours of operation are Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm and Sunday 9:00 am to 9:00 pm ET.

Sincerely,
Ocwen Loan Servicing, LLC

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*



## Ocwen Loan Servicing, LLC
WWW.OCWEN.COM
*Helping Homeowners is What We Do!* ™

1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
Toll Free: (800) 746 - 2936

### This Coupon Must Be Included with Escrow Shortage Payment
### Escrow Shortage Payment

| Franklin J Lizausaba<br>6301 Nw 199 Ln<br>Miami Lakes, FL 33015 | **Loan Number** | **Total Shortage** |
|---|---|---|
| | | $1,522.40 |

| | |
|---|---|
| *Payable to:*<br>Ocwen Loan Servicing LLC<br><br>Attn: Escrow Department<br><br>P.O. Box 24737<br><br>West Palm Beach, FL 33416-4737 | **Note -** *If the escrow shortage amount of $1,522.40, is paid, the monthly escrow payment will be adjusted accordingly*<br><br><br><br>*Amount of Payment* **$** _____ |

NMLS # 1852                                                                                    BKA_SHORTAGEM

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally.*

**After Recording Return To:**
Ocwen Loan Servicing, LLC
Attn: HAMP Modifications
P.O. Box 24737
West Palm Beach, FL 33416
Investor #: 11560

_____[Space Above This Line for Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Servicer:                                        Ocwen Loan Servicing, LLC
Original Mortgagor / Maker:                      FRANKLIN J. LIZASAUBA AND SANDRA L. LIZASAUBA
Marital Status:                                  MARRIED
Original Mortgagee / Payee:                      RESIDENTIAL ACCEPTANCE NETWORK, INC.
Original Amount:                        $        300,000.00
Original Mortgage Date:                          MARCH 26, 2007
Date Recorded:                                   APRIL 05, 2007
Reel / Book:                                     25509        Page / Liber:   2636
CRFN / Document/Instrument #:                    2007R0345758
AP# / Parcel #:                                  30-20010032640
Property Address:                                6301 NW 199 LANE
City:  MIAMI LAKES                               County:  MIAMI-DADE                State:  FLORIDA

Present Holder of the Note and Lien:             OCWEN LOAN SERVICING, LLC
Holder's Mailing Address:
(Including county)                               5720 Premier Park Dr,
                                                 West Palm Beach, FL 33407
                                                 Palm Beach County

New Money _____  $ _____   141,613.99

LEGAL DESCRIPTION: SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Registered Land (OH Only):      ☐ YES        ☐ NO
AFN# (OH Only):                 _____

District (NYC Only): _____ Section: _____    Block: _____    Lot: _____

District (MA Only): _____

Lot (DC Only): _____            Square: _____

EXHIBIT "A"

LOT 10, in Block 10 of Country Lakes Manors, Section Two, as shown on the Plat thereof, as recorded in Plat Book 117, Page 74 of the Public Records of Miami-Dade County, Florida.

Certificate of Preparation

This is to certify that this instrument was prepared by Ocwen Loan Servicing, LLC, one
of the parties named in the instrument.

_____
Signature

Diane Bischoff
LOSS MITIGATION

Ocwen Loan Servicing LLC
Loss Mitigation Department
5720 Premier Park Dr
West Palm Beach, FL 33407
1-800-850-4622

601783908                                                                                                    -HMP-
Investor Loan # _____
**After Recording Return To:**

_____
_____
_____

This document was prepared by _____
_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

## (Step Two of Two-Step Documentation Process)

Borrower(s) ("I"): **Franklin J Lizausaba**

Servicer ("Servicer"): *Ocwen Loan Servicing, LLC*

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): **3/26/2007**

Loan Number: ████████

Property Address: **6301 Nw 199 Ln Miami Lakes, FL 33015** ("Property")

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Servicer, the Servicer will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Servicer and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B. I live in the Property as my principal residence, and the Property has not been condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E. Under penalty of perjury, all documents and information I have provided to Servicer in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F. If Servicer requires me to obtain credit counseling in connection with the Program, I will do so;

   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan; and

*HMP_Tier1_v2.0*
348117
*NMLS # 1852*

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. TIME IS OF THE ESSENCE under this Agreement;

   B. If prior to the Modification Effective Date as set forth in Section 3 the Servicer determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Servicer will have all of the rights and remedies provided by the Loan Documents; and

   C. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 4/1/2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 4/1/2015.

   A. The new Maturity Date will be: 3/1/2051, at which time a final balloon payment in an amount equal to all remaining amounts owed under the Loan Documents will be due.

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Servicer but not previously credited to my Loan. The new Principal balance of my Note will be $441,613.99 (the "New Principal Balance").

   C. Interest at the rate of 2.00000% will begin to accrue on the New Principal Balance as of 3/1/2015 and the first new monthly payment on the New Principal Balance will be due on 4/1/2015. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5.0 | 2.00000% | 3/1/2015 | $1,434.87 | $538.16, adjusts annually after year 1 | $1,973.03, adjusts annually after year 1 | 4/1/2015 | 60 |
| 6 | 3.00000% | 3/1/2020 | $1,642.82 | Adjusts Annually | Adjusts Annually | 4/1/2020 | 12 |
| 7-Loans Maturity | 3.75000% | 3/1/2021 | $1,804.57 | Adjusts Annually | Adjusts Annually | 4/1/2021 | 360 |
| - | - | - | - | - | - | - | - |
| - | - | - | - | - | - | - | - |

   *The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

   The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step or simple interest rate.

   D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

   E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

   F. I agree to pay in full (1) the Deferred Principal Balance (deferred principal balance will be treated as a non-interest bearing principal forbearance. I will not pay interest or make monthly payments on the deferred principal balance.), if any, and (2) any other amounts still owed under the Loan Documents, by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance (The new principal balance less the deferred principal balance shall be referred to as the "interest bearing principal balance), or (iii) the new Maturity Date.

HMP_Tier1_v2.0
348117
NMLS # 1852

-HMP-

**4. Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Servicer.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Servicer on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Servicer under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Servicer in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Servicer requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Servicer all notices of amounts to be paid under this Section 4.D. I shall pay Servicer the Funds for Escrow Items unless Servicer waives my obligation to pay the Funds for any or all Escrow Items.

Servicer may waive my obligation to pay to Servicer Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Servicer and, if Servicer requires, shall furnish to Servicer receipts evidencing such payment within such time period as Servicer may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Servicer may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Servicer any such amount. Servicer may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Servicer all Funds, and in such amounts, that are then required under this Section 4.D.

Servicer may, at any time, collect and hold Funds in an amount (a) sufficient to permit Servicer to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Servicer can require under RESPA. Servicer shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Servicer, if Servicer is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Servicer shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Servicer shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Servicer pays me interest on the Funds and applicable law permits Servicer to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Servicer shall not be required to pay me any interest or earnings on the Funds. Servicer and I can agree in writing, however, that interest shall be paid on the Funds. Servicer shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Servicer shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as ·defined under RESPA, Servicer shall notify me as required by RESPA, and I shall pay to Servicer the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

*HMP_Tier1_v2.0*
348117
*NMLS # 1852*

Upon payment in full of all sums secured by the Loan Documents, Servicer shall promptly refund to me any Funds held by Servicer.

E.   That this Agreement constitutes notice that the Servicer's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

F.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Servicer and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H.   That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows:  If all or any part of the Property or any interest in it is sold or transferred without Servicer's prior written consent, Servicer may, at its option, require immediate payment in full of all sums secured by the Mortgage.  However, Servicer shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer.  If Servicer exercises this option, Servicer shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage.  If I fail to pay these sums prior to the expiration of this period, Servicer may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I.   That, as of the Modification Effective Date, a buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan.  This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer of the Property.

J.   If under the Servicer's procedures a title endorsement or subordination agreements are required to ensure that the modified mortgage Loan retains its first lien position and is fully enforceable, I understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents or to execute the Modification Agreement if the Servicer has not received an acceptable title endorsement and/or subordination agreements from other lien holders, as Servicer determines necessary.

K.   That, as of the Modification Effective Date, any provision in the Note, as amended, for the assessment of a penalty for full or partial prepayment of the Note is null and void.

L.   Corrections and Omissions. You agree to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect the liens and security interests intended to secure the payment of the loan evidenced by the Note. If an error in the terms hereof is detected after execution of this Agreement, you understand that a corrected Agreement will be provided to you and this Agreement will be void upon notice of such error. Should you elect not to sign any such corrected Agreement, your loan will revert to the terms of your original Loan Documents.

M.   Mortgage Electronic Registration Systems, Inc. "MERS" is a separate corporation existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street, Suite C Danville, IL 61834, (888) 679-MERS.  In cases where the Loan has been registered (solely as nominee for lender and lender's successors and assigns) with MERS and MERS is named as mortgagee in the Loan Documents, MERS, if necessary to comply with law or custom, has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Servicer including, but not limited to, releasing and canceling the mortgage loan.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

HMP_Tier1_v2.0
348117
NMLS # 1852

-HMP-

☑ *If this box is checked, Borrower(s) signature must be notarized.*

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _Franklin J Lizausaba_          _08_ / _13_ / _2015_  Date

State of Florida)
County of _Broward_          )

On _August 13, 2015_ before me, _Mark Hausfeld_ personally appeared _Franklin J. Lizausaba_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _Mark Hausfeld_

Commission expiration date _May 20, 2016_

Personally Known_____ OR Produced Identification _X_

Type of Identification Produced _FL DL (valid 2021)_

Mark Hausfeld
COMMISSION # EE 196590
EXPIRES: MAY 20, 2016
WWW.AaronNotary.com

---

Sign Here→ _Sandra Lizausaba_     _8_ / _13_ / _15_  Date

State of Florida)
County of _Broward_          )

On _August 13, 2015_ before me, _Mark Hausfeld_ personally appeared _Sandra Lizausaba_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _Mark Hausfeld_

Commission expiration date _May 20, 2016_

Personally Known_____ OR Produced Identification _X_

Type of Identification Produced _FL DL (valid 2021)_

Mark Hausfeld
COMMISSION # EE 196590
EXPIRES: MAY 20, 2016
WWW.AaronNotary.com

*HMP_Tier1_v2.0*
348117
*NMLS # 1852*

-HMP-

**\*All individuals on the title (even if not a borrower on the note) must sign this agreement. If there are more than two title holders to this property, please have them sign below. If no other title holders exist, please leave page 6 blank and return it with the rest of the agreement.**

In Witness Whereof, the Servicer and I have executed this Agreement.

Sign Here→ _____    ____/____/_____  Date
State of Florida)

County of _____)

On _____ before  me,  _____personally  appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Sign Here→ _____    ____/____/_____  Date
State of Florida)

County of _____)

On _____ before  me,  _____personally  appeared
_____, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature(s) on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Florida that the foregoing paragraph is true and correct. WITNESS my hand and official seal.

Signature _____ (Seal)

Print Name: _____

Commission expiration date____/____/_____

Personally Known_____ OR Produced Identification_____

Type of Identification Produced_____

---

Servicer _____

DEC 1 6 2015

Date _____

If applicable: _____

Mortgage Electronic Registration Systems, Inc. – Nominee for Servicer

BY _____  Gwen Vaden    **Authorized Officer**

OCWEN LOAN SERVICING, LLC

By:  Gwen Vaden
Servicing Operations Specialist
Date:  18-December-2015

WITNESSES:

Felicia Perry

Gisele Cazeau

STATE OF Florida }
COUNTY OF Palm Beach }

On 18-December-2015, before me, the undersigned Notary Public, personally appeared Gwen Vaden, Servicing Operations Specialist of Ocwen Loan Servicing, LLC, personally known to me to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, that by his/her signature on the instrument, the individual(s) or person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the county of Palm Beach, State of Florida.

Notary Public State of Florida
April N Alston
My Commission EE 214100
Expires 07/05/2016

Witness my hand and official seal.

Notary          State of Florida    **April Alston**
                County of Palm Beach

Prepared by:
Gwen Vaden

Ocwen Loan Servicing, LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409